IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 18-CR-547

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JAY LINKENHOGER,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
Court's Sentence

_____

Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, occurring at 11 a.m., on the 7th day of January, 2020, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    Jeremy Lee Chaffin, U.S. Attorney's Office-Grand Junction 205 North 4th Street, Suite 400, Grand Junction, CO 81501, appearing for the Government.

    Jason Robert Conley, JConley Law, LLC 405 Ridges Boulevard, Suite B, Grand Junction, CO 81507, appearing for the Defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Tammy Hoffschildt, 901 19th Street, Room A251, Denver, Colorado, 80294, (303) 292-1088

**PROCEEDINGS**

*THE COURT:* Thank you. Then I will announce the sentence that I intend to impose, and of course, counsel, you will have an opportunity to make objections before judgment actually enters. If I raise something in the calculation of the sentence that you believe constitutes error or raises an issue that you haven't had an opportunity to address or research, I invite you to request a continuance.

At the beginning of this hearing I identified the documents that I had studied. I asked counsel if they and the defendant had adequate opportunity to review and consider those documents, and they affirmed that they did. I asked whether there were any additional documents and there were none, and so our record is composed of what has been said here in the courtroom and the documents that have been filed, and I consider this information, this record, in evaluating what is an appropriate sentence under 18 U.S.C. Section 3553, a federal statute. That statute requires me to consider objectives and factors in sentencing. It requires me to determine a sentence that is sufficient, but not greater than necessary to satisfy particular objectives. So the sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment. It must adequately deter criminal conduct. It must protect the public from further crimes by the defendant. It must provide the defendant with needed

1   educational or vocational training, medical care, other
2   correctional treatment in the most effective manner.
3           To fashion a sentence to meet these objectives, the
4   statute directs me to consider the nature and circumstances of
5   the offense, the history and characteristics of the defendant,
6   the kinds of sentences that are available, the sentence
7   prescribed by the Federal Sentencing Guidelines, the need to
8   avoid unwarranted sentence disparities among defendants with
9   similar records found guilty of similar conduct, and in the
10  appropriate case, the need for restitution.
11          There were no disputes as to the factual contents of
12  the most recent presentence report.  There was a dispute as to
13  the calculation under the Federal Sentencing Guidelines in that
14  report, and that's where we begin the analysis.  The charge
15  that the defendant is convicted of is being in possession of a
16  firearm as a convicted felon, and the offense conduct that the
17  parties have agreed to is that on September 12th, 2018, while
18  attempting to avoid apprehension from law enforcement for
19  outstanding warrants, the defendant barricaded himself and his
20  girlfriend, at the time, in a hotel room, in Delta, Colorado.
21  While in that room he possessed a Springfiled XDS 45-caliber
22  pistol, serial number S3104239.  After barricading themselves
23  in the room for approximately two hours, he and his girlfriend
24  surrendered and were arrested.
25          The pistol was located in plain view on the floor,

1   approximately 3 feet from the door where the defendant was
2   arrested.  Officers also located, throughout the room, various
3   sizes of ammunition, and a small amount of methamphetamine.
4   Methamphetamine, at the time, was a drug felony under Colorado
5   law.
6          The base offense level for a felon in possession, in
7   violation of 18 U.S.C. Section 922(g)(1), the crime that the
8   defendant has been convicted of is set by Sentencing Guidelines
9   Section 2K2.1.  The base offense level here is set at 14.  The
10  probation office, in preparing the report, did not impose a
11  specific offense characteristic under Section 2K2.1(b)(6)(B),
12  which would increase the base offense level by four levels.
13         The writer of the presentence report did not believe
14  that the firearm facilitated or had the potential to facilitate
15  the possession of methamphetamine, and therefore, did not
16  affect or facilitate another crime.  The government disagrees
17  with this conclusion, and I agree with the government.
18         The question is not whether this facilitated the
19  methamphetamine.  It is whether it facilitated any other
20  offense, or had the ability to facilitate another offense.  The
21  Tenth Circuit law applicable to that question includes two
22  cases, the *United States of America vs. Cody M. Justice*, found
23  at 679 Fed. 3rd, 1251, Tenth Circuit 2012 case, and *United*
24  *States vs. Perry*, a March 29th, 2018 decision, found at 727
25  Fed. Appendix 539.  Both of these decisions apply a broad

1  definition of facilitation, and both of these decisions

2  recognize that facilitation, under this provision of the

3  guidelines, includes actual facilitation or potential

4  facilitation.  Here, there was a crime, resisting arrest and

5  trashing a hotel room, in addition to the methamphetamine, and

6  the threat that was used in the course of the conduct of the

7  defendant, related to his possession of a firearm.  So this

8  Court has no difficulty in saying that this firearm facilitated

9  another offense, and therefore, the four-level increase under

10 Section 2K2.1(b)(6)(B) is appropriate.

11         With that offense level, there is, nevertheless, a

12 reduction of two levels for the defendant's acceptance of

13 responsibility under 3E1.1(a), that results in an increase in

14 the ultimate adjusted offense level, and I'm going to ask our

15 prosecutor here to do the calculation, because I'm not making

16 sense out of the calculation in the presentence report.

17         *MR. CHAFFIN:*  So, Your Honor, to explain, in the

18 presentence report, because the offense level was below 16, the

19 additional one-level reduction for acceptance of responsibility

20 wasn't taken into account.

21         *THE COURT:*  Okay.

22         *MR. CHAFFIN:*  With that four-level enhancement.

23         *THE COURT:*  There should be three levels?

24         *MR. CHAFFIN:*  Yes, Your Honor.

25         *THE COURT:*  Three-level reduction for acceptance of

1    responsibility.
2         So what's the calculation that you see?  A base
3    offense level of 18, less three levels for acceptance of
4    responsibility, for a Total Offense Level of 15?
5         *MR. CHAFFIN:*  Correct, Your Honor.
6         *THE COURT:*  And is the defense in agreement with that?
7         *MR. CONLEY:*  Yes, Your Honor.
8         *THE COURT:*  Okay.  That's the first component under
9    the guidelines.  The second component under the guidelines is
10   criminal history, and the shortened version here, of the
11   defendant's criminal history, is that he has 17 criminal
12   history points, and that puts him in Criminal History Category
13   VI, which is the highest criminal history category under the
14   federal system.  That doesn't really tell us the whole story.
15        *MR. CONLEY:*  Your Honor, I apologize, profusely.
16        *THE COURTROOM DEPUTY:*  The court reporter can't hear.
17        *THE COURT:*  Let's -- let's take a 20-minute recess,
18   then, at this point, and we will try and reconvene at 1
19   o'clock, subject to the Marshal's availability.  All right.  We
20   will stand in recess until 1 o'clock.
21        *THE COURTROOM DEPUTY:*  All rise.
22      (Recess at 12:41 p.m.)
23      (In open court at 1:08 p.m.)
24        *THE COURT:*  Please be seated.  Brian, can I get you to
25   come open the computer, please.  All right.  We're reconvened

1    in case number 18-cr-547.  We have taken a brief recess, and I
2    was -- and the point at which we took the recess, was the point
3    at which we were calculating, under the guidelines, what the
4    guidelines sentence -- sentencing range would be.  We were at
5    the stage where we were dealing with the criminal history
6    calculation.  Here the defendant has 17 criminal history points
7    and that puts him in criminal history category VI, but that's
8    really not the entire story with regard to criminal history.
9    First of all, Criminal History Category VI, the highest
10   criminal history category in the federal system, is applicable
11   when somebody has 13 criminal history points.  So the defendant
12   here has four criminal history points higher than is necessary
13   to get into the highest category, and given his age, mid 30s,
14   it takes a very substantial criminal history to acquire that
15   kind of -- that number of criminal history points.
16            Nothing is counted for his juvenile convictions, but
17   many of his adult convictions bear upon this particular
18   sentence.  His first adult conviction was in 2000, at age 18,
19   for robbery, that was a felony conviction.  With a felony
20   conviction, he was prohibited from having any firearm.  So from
21   the time he was 18 years old, until now, the law prohibited him
22   from having any firearm.
23            Now, there are a number of other convictions that --
24   for which no criminal history points are applied.  Convictions
25   in 2001, 2003, 2004, 2005, 2006.  Several of these involved

1   assaults, which, under certain circumstances, are considered
2   crimes of violence in the federal system, but for which no
3   points are assigned for a variety of reasons.  Then in 2007,
4   the defendant was convicted of being in possession of a
5   firearm; for that, he receives three criminal history points.
6   He was sentenced to three years of probation.  His probation
7   was revoked.  He was sentenced to 13 months in the Colorado
8   Department of Corrections, and a year of parole.  His sentence
9   was terminated in 2013.
10         If he was not aware before that point in time, he
11  certainly was aware with that conviction that he could not have
12  any firearms.  He has convictions following that, violation of
13  a protection order in 2007, harassment in 2010, reckless
14  endangerment in 2012, various driving offenses that rose to the
15  level of felonies, tampering with evidence, a felony -- escape
16  from a felony conviction, in 2017, and vehicular eluding in
17  2018.
18         The facts and circumstances surrounding this criminal
19  history bear upon the sentence that is imposed for this federal
20  offense, because it affects the Court's assessment of the
21  seriousness of this offense, the need to promote respect for
22  the law, the need to adequately deter criminal conduct and the
23  need to protect the public from further crimes by the
24  defendant.
25         With a Criminal History Category of VI, and an offense

1   level of 15, the guidelines recommend incarceration of 41 to 51
2   months under the -- the 2018 guidelines.
3         Now, I want to pause at this point, because I know
4   counsel have been working off of another calculation, and let
5   me ask you, counsel, your calculation is different than what
6   the guidelines are showing, according to my calculation.
7         *MR. CONLEY:*  Your Honor, given the offense level of
8   15, I do believe that the range applicable range is 41 to 51
9   months.
10        *MR. CHAFFIN:*  Your Honor, I think that's correct.  I
11  think I missed -- I looked at the wrong column.
12        *THE COURT:*  Well, I think it may be the -- the
13  reduction for acceptance of responsibility that changes that.
14        *MR. CHAFFIN:*  Yes, Your Honor.
15        *THE COURT:*  But our range here is 41 to 51 months.  I
16  think we are all in agreement; is that right?
17        *MR. CONLEY:*  That's correct.
18        *MR. CHAFFIN:*  Yes.  That's correct.
19        *THE COURT:*  So the guidelines recommend 41 to 51
20  months, supervised release of one to three years.  A fine of
21  5500 to $55,000 I do not think is correct.  What is the correct
22  calculation on the fine?
23        *MR. CHAFFIN:*  Seventy-five hundred to 75,000.
24        *THE COURT:*  Okay.  You agree?
25        *MR. CONLEY:*  Yes.

1        *THE COURT:*  Okay.  Then the fine is 7500 to 75,000.
2   There is a Special Assessment of $100 that's mandated by
3   statute.  There is no request for a departure under the
4   guidelines.  The defense, however, requests that the Court
5   impose a non-guideline sentence, and the -- the non-guideline
6   sentence that is requested is calculated based upon the bottom
7   end of the guideline range, less 482 days, which the defense
8   asks the Court to credit against that sentence, because that's
9   the amount of time that the defendant has been in custody; is
10  that correct?
11       *MR. CONLEY:*  Yes.
12       *THE COURT:*  Okay.  Let me deal with the arguments that
13  have been raised with regard to the non-guideline sentence.
14  There are several rationals that have been offered by the
15  defense.  The first is that the defendant has been in federal
16  custody on a writ, and the 482 days that he has been in custody
17  should be credited against his federal sentence, even though,
18  under federal law, it ordinarily would not be so credited.  I
19  deny that request.
20       There is no federal law that mandates that credit,
21  that's why the request is made in this context, but, moreover,
22  more importantly, the defendant is about to be sentenced on
23  state charges, tomorrow, and the state judge has the ability to
24  credit against any sentence imposed there the time that the
25  defendant has been in state custody, which includes the 482

1  days.

2  The second request is that the sentence in this case
3  be made to run concurrently with the sentence -- sentences to
4  be imposed in the state case or cases. I decline to do that.
5  There are no current sentences on the state charges for which
6  this charge could run concurrently, and even if I could impose
7  a concurrent sentence, I would not, and I would not because the
8  conduct that gives rise to the federal charge is the possession
9  of the firearm, on September 12th, 20 ... 17?

10  *MR. CONLEY:* Eighteen.

11  *THE COURT:* Eighteen; 2018. The other charges
12  arise -- or the other charges for which the defendant will be
13  sentenced in state court arise from behavior unassociated with
14  that. Indeed, the behavior that gave rise to those charges
15  occurred before September 12th, 2018.

16  The third argument that is made is that the defendant
17  has had a difficult childhood. There's no doubt about that.
18  And he didn't deserve what happened to him as a child, but that
19  doesn't excuse his behavior now, and it certainly does not
20  excuse being in possession of a firearm. It may be the reason
21  that he acts the way he acts, but it does not excuse it.

22  As to family support, I think he recognizes, and I
23  agree with him, he is very fortunate to have the family that is
24  here today supporting him. He is very fortunate to have them
25  back him and love him and accept him, no matter what, but that

1  really doesn't bear on the likelihood of whether or not he is
2  going to commit a crime in the future, because his family has
3  been here before; not in this courtroom, but supporting him in
4  the past, and he, nevertheless, has engaged in criminal
5  behavior.
6      So, I hope he will learn from his family's support
7  that he can do better this time, but there's certainly no
8  guarantee that that is the case, and therefore, I can't and
9  will not impose a variant or non-guideline sentence based upon
10 family support.  These are the requests made by the defense.
11     As to incarceration, I intend to impose a guideline
12 sentence.  I intend, given his criminal history, and given the
13 fact that he has been previously convicted of being a felon in
14 possession of a firearm, to impose the sentence at the top end
15 of the guideline range, 51 months.  I intend to impose a period
16 of supervised release of three years, to recommend that he
17 participate in the RDAP program, but understanding that,
18 whether he is entitled to participate in the RDAP program will
19 depend upon his behavior in prison.
20     Mr. Linkerhoger, you have said all of the right things
21 to say in your allocution, and I firmly believe you want to
22 change.  But saying words doesn't make it so.  There's the old
23 saying that actions speak louder than words, and your actions
24 to change are what are important here, not simply your desire
25 to do so.

1 So, to summarize the sentence I intend to impose here,
2 it is 51 months of incarceration, followed by three years of
3 supervised release. I will include a search special condition,
4 but not the overbroad one that's contained in the presentence
5 report. I include the search condition, because of the
6 repeated problem with the defendant's possession of firearms
7 that pose a risk to the public's safety. I will not impose a
8 fine, because he lacks the ability to pay a fine. I'm required
9 to impose the special assessment of $100.
10 Any need for clarification further explanation or
11 request for a continuance?
12 *MR. CHAFFIN:* No, Your Honor.
13 *MR. CONLEY:* No, Your Honor.
14 *THE COURT:* Then having determined the sentence that I
15 believe comports with the sentencing objectives, and is
16 sufficient but no greater than necessary, pursuant to the
17 Sentencing Reform Act of 1984, it is the judgment of the Court
18 that the defendant, Jay Linkenhoger, be committed to the
19 custody of the bureau of prisons to be imprisoned for a term of
20 51 months.
21 I understand and appreciate that the Mesa County
22 District Court will be sentencing him in cases numbered
23 17CR1055 and 18CR1660. It will be up to the judge in those
24 cases to determine whether the sentence imposed here runs
25 concurrently or consecutively with the sentence imposed in the

1  state cases, and similarly, it will be up to the state court to
2  determine what credit the defendant receives on his sentences
3  there for the 482 days that he has been in state custody, but
4  in -- in the -- detained as a federal detainee on a writ.
5       Upon release from imprisonment, he will be placed on
6  supervised release for a term of three years.  Within 72 hours
7  of release from the custody of the bureau of prisons, he will
8  report, in person, to the probation office in the district to
9  which he is released.  While on supervision, he will not commit
10 another state, federal or local crime, and he must not possess
11 a controlled substance or any firearm.
12      Now, let me be real clear on that, that includes
13 marijuana.  No marijuana, because it is a federally controlled
14 substance.  You can't possess it and you cannot use it.
15      You similarly cannot possess a firearm.  You must
16 submit to at least one drug test within 15 days of placement on
17 supervision and two periodic tests thereafter.  You must
18 cooperate in the collection of DNA as directed by the probation
19 officer.  You must comply with the standard conditions adopted
20 by the Court in General Order 2019-6, and three special
21 conditions, which are reasonably related to the factors
22 enumerated in 18 U.S.C. Section 3553 and 3583.
23      You must participate in and successfully complete a
24 program of testing and/or treatment for substance abuse as
25 approved by the probation officer until the time that you are

1    released from the program by the probation officer.  And during
2    that time, you will abstain from all use of alcohol or other
3    intoxicants, as well.  You must participate in and successfully
4    complete a program of mental-health treatment, as approved by
5    the probation officer, until such time as you are released from
6    the program by the probation officer.  And to the extent that
7    you can pay for these programs, and are directed to pay for
8    these programs by the probation officer, you will do so.
9           You must submit your person, property, residence,
10   vehicle to a search conducted by a United States probation
11   officer.  Failure to submit to search may be grounds for
12   revocation of supervised release.  You must warn any other
13   occupants on the premises where you reside that those premises
14   may be subject to searches pursuant to this condition, and an
15   officer may conduct a search pursuant to this condition, only
16   when reasonable suspicion exists to believe that you have
17   violated the condition of your supervision, and must be limited
18   only to the areas that might contain evidence of the violation.
19   Any search must be conducted at a reasonable time and in a
20   reasonable manner.
21          No fine is imposed, for the reasons specified, but you
22   must pay a special assessment of $100, which is due and payable
23   immediately.
24          Do you need a forfeiture order?
25          *MR. CHAFFIN:*  No, Your Honor as ... co-counsel

1   indicated, no forfeiture on the weapon, because it's staying
2   with the state.
3           *THE COURT:*  Okay.  Great.
4           *THE COURT:*  Mr. Linkerhoger, I advise you of your
5   right to appeal from the sentence.  If you reserve the right to
6   appeal in your Plea Agreement, you must exercise that right
7   within 14 days after entry of judgment or you lose your right
8   to appeal.  You exercise your right to appeal by filing a
9   notice of appeal, and ordinarily your counsel would file a
10  notice of appeal for you, but if, for some reason, he is unable
11  or unwilling to do so, you may request, and I will direct the
12  Clerk of the Court to file a notice of appeal on your behalf.
13          Is there any further business to bring before the
14  Court?
15          *MR. CHAFFIN:*  No, Your Honor.  Actually, Your Honor, I
16  apologize, Mr. Linkerhoger does have sentencing in state court,
17  I have asked that the Court indicate that he should be returned
18  to state custody today, so that that doesn't interfere with
19  sentencing in the other matters.
20          *THE COURT:*  And then is your plan to --
21          *MR. CHAFFIN:*  File a detainer.
22          *THE COURT:*  Okay.  All right.  Yes, sir.
23          *MR. CONLEY:*  To answer your question, no, Your Honor.
24          *THE COURT:*  Thank you, very much.  Then the defendant
25  will be immediately remanded to the custody of the United

 1   States Marshal, but turned over to state authorities for
 2   purposes of his sentencing tomorrow, and then I understand a
 3   detainer will be filed so that he can begin his sentence in
 4   federal custody.
 5          Thank you, counsel, thank you to our court staff and
 6   our Marshal staff that will conclude this matter and we will
 7   stand in recess.
 8          *THE COURTROOM DEPUTY:*  All rise.  Court will be in
 9   recess.
10       (Recess at 1:32 p.m.)
11                    REPORTERS' CERTIFICATE
12          I certify that the foregoing is a correct partial
13   transcript from the record of proceedings in the above-entitled
14   matter.
15          Dated at Denver, Colorado, this 13th day of January,
16   2020.
17
18
19                       _____
                         Tammy Hoffschildt, FCRR, CRR, RMR
20
21
22
23
24
25